UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x
                                                        :
KROLL, LLC (F/K/A DUFF & PHELPS, LLC) and               :
KROLL HOLDCO, LLC (F/K/A KROLL, LLC),                   :        Case No. 1:21-cv-9037
                                                        :
                                    Plaintiffs,         :
                                                        :        **COMPLAINT**
                 -against-                              :
                                                        :        **JURY TRIAL DEMANDED**
                                                        :
K2 INTEGRITY HOLDINGS, INC., K2                          :
INTELLIGENCE, LLC and JULES KROLL                       :
                                                        :
                                    Defendants.         :
-------------------------------------------------------------------- x

Plaintiffs Kroll, LLC (f/k/a Duff & Phelps, LLC) and Kroll HoldCo, LLC (f/k/a Kroll,

LLC) (collectively, "Kroll" or "Plaintiffs," unless otherwise stated), by and through their attorneys,

Winston & Strawn LLP, as and for their Complaint, allege as follows:

### PRELIMINARY STATEMENT

1.      In 2004, Jules Kroll sold an investigative business he created for nearly $2 billion,

and he personally took home over $100 million from the sale.  Transfer of the "Kroll" name and

trademarks was key in the consideration for the sale.  Rather than withhold the name as part of the

deal, Jules Kroll willingly pocketed $100 million and gave up use of the "Kroll" brand.  He agreed

not to use the "Kroll" name in business, except in extremely limited circumstances, and never in a

trademark for a competing business.  Lamenting that decision, one that brought him immense

fortune, Jules Kroll recently told a reporter, "I now compete against my own name."  He thus took

action against the competitor he was referencing—the Plaintiffs here—by his attempt to reclaim the

mark he long ago sold for a handsome nine-figure sum of money.  He took action to reclaim the

"Kroll" name and marks *unlawfully* and to compete *unfairly* in business with Plaintiffs, the rightful owners of the KROLL brand and trademarks.

2.      The latest assault on the KROLL brand is part of a pattern of behavior for Jules Kroll. Following the 2004 sale of his investigation business, Jules Kroll established other businesses, some together with his son, Jeremy Kroll.  Repeatedly, Jules Kroll and his businesses have tried to reclaim use of the name "Kroll."   With each new business, in one way or another, Jules Kroll and his businesses have attempted to use the "Kroll" name in a way that undermined his promise not to do so.  And after being challenged, each time they relented.  That history did not stop Jules Kroll and his businesses from trying again.

3.      This is an action for declaratory judgment, trademark infringement, and false designation of origin to redress the most recent attempt by Jules Kroll, and his current business K2 Integrity Holdings, Inc., to recapture unlawfully the "Kroll" name and trademark he sold.  Jules Kroll and K2 have threatened to begin using the "Kroll" name in a new trademark for the K2 business, incorporating the tagline "founded by Jules Kroll and Jeremy Kroll."  Their threatened use of the "Kroll" name, as part of a new trademark and tagline for K2, is a breach of contract and infringes Plaintiff's rights in the KROLL trademark.  Defendants' infringing use of "Kroll" will create consumer confusion, to the detriment of the public.  It will harm Plaintiffs' respected services associated with the "Kroll" name and KROLL trademarks, established through years of growth and market leadership after Jules Kroll left the business.

## THE PARTIES

4.      Plaintiff Kroll, LLC (f/k/a Duff & Phelps, LLC) is a Delaware limited liability company with its principal place of business at 55 E. 52nd Street, New York, New York 10055.

5.    Plaintiff Kroll HoldCo, LLC (f/k/a Kroll, LLC) is a Delaware limited liability company with its principal place of business at 55 E. 52nd Street, New York, New York 10055.

6.    Defendant K2 Integrity Holdings, Inc. is a Delaware corporation with its principal places of business in New York, New York.

7.    Defendant K2 Intelligence, LLC is a Delaware limited liability company with its principal place of business in New York, New York.

8.    Defendant Jules Kroll is an individual with an office address of 845 Third Avenue, 15th Floor, New York, NY 10022.  On information and belief, Jules Kroll is a co-founder and Executive Chair of Defendant K2, and has personally taken part in, authorized and/or approved the infringing activities alleged herein within New York.

## JURISDICTION AND VENUE

9.    This Court has subject-matter jurisdiction over the federal claims under 15 U.S.C. § 1121 (Lanham Act), 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338 (trademark), and over state-law claims under 28 U.S.C. § 1367 (supplemental jurisdiction).  The amount in controversy exceeds $75,000 exclusive of interest and costs.

10.    This Court has personal jurisdiction over Defendants because one or more of the Defendants reside in and conduct business in New York; and on information and belief have taken actions within the state of New York that will cause immediate harm to Plaintiffs within New York.

11.    Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to these claims occurred in this District, a substantial party of the property that is the subject of this action is situated in this District, and because Defendants are subject to personal jurisdiction in this District.

3

## FACTUAL BACKGROUND

### A. The Kroll Business

12.　　Kroll is today a global provider of services and digital products related to valuation, governance, corporate intelligence and investigations, corporate finance, restructuring, financial advice, compliance, and cyber risk.  Kroll serves more than 5,000 clients a year, including 48% of the S&P 500, 61% of the Fortune 100, 85% of the Am Law 100 and 76% of the world's top-tier private equity firms. With Kroll's exceptional track record of global success, one of its most valuable assets is the KROLL brand and name, which is an established, well-respected name in the industry and is synonymous with the premier services that Kroll offers as a business today.

13.　　Kroll, LLC's predecessor was Duff & Phelps, LLC, a global leader in valuation and business advisory services.  In 2018, Duff & Phelps acquired Kroll HoldCo, LLC to enhance its focus in complex investigations, security, and cyber solutions work.  It is the traditional Kroll business, including complex investigations, that is the subject of this lawsuit.  Beginning in 2021, Duff & Phelps began transitioning to operate its entire global business—both the legacy Duff & Phelps business and the Kroll business acquired in 2018—unified under the KROLL brand.

### B. Kroll's Trademarks

14.　　Since its founding in 1972, Plaintiffs Kroll, through their predecessors in interest, have used the KROLL trademark in connection with their business.

15.　　In recognition of the distinctiveness of the KROLL trademark, Kroll has obtained multiple federal trademark registrations for the KROLL mark and variations thereof, giving it exclusivity of use of the mark for the covered services, in addition to its broad common-law rights.

4

16.     Through use and registration, Plaintiffs own the KROLL trademarks including the following U.S. trademark registrations for marks containing the term KROLL owned by Plaintiff Kroll HoldCo., LLC (f/k/a Kroll, LLC) (collectively, the "KROLL Marks").

| Mark | Reg. No. | Reg. Date |
| --- | --- | --- |
| KROLL | 1948659 | January 16, 1996 |
| KROLLDISCOVERY | 5740254 | April 30, 2019 |
| KROLLDISCOVERY & Design    KrollDiscovery | 5734353 | April 23, 2019 |
| KROLL ONTRACK | 2906977 | November 30, 2004 |

17.     Registration Nos. 1948659 and 2906977 are incontestable.

18.     Notably, registration of the KROLL mark first occurred under Jules Kroll's ownership, emphasizing its importance as an asset of the Kroll business.

19.     As a result of Kroll's continuous use of the distinctive KROLL Marks, it has developed significant goodwill, and is well known. Through Plaintiffs' long-standing use and promotion of the KROLL Marks, the public has come to associate the KROLL Marks exclusively with Plaintiffs and their services.

**C. Jules Kroll's Attempts to Reclaim the KROLL Mark Unlawfully**

20.     Kroll traces part of its history back to 1972, as an investigations firm founded by defendant Jules Kroll. In July 2004, Jules Kroll sold the business to Marsh & McLennan Companies in a $1.9 billion transaction. Jules Kroll himself received over $100 million. A material term of the acquisition by the Marsh & McLennan Companies was that while Jules Kroll would be able to use his name in connection with certain business pursuits, he could not use the name to compete with

Kroll.  Accordingly, in connection with that transaction, Jules Kroll entered into an Employment Agreement with Marsh USA Inc. and Kroll dated July 7, 2004 (the "Employment Agreement") outlining the terms of his continued employment with Kroll.  The Employment Agreement also restricted Jules Kroll's use of the "Kroll" name in connection with any future business.

21.    The Employment Agreement specified that Jules Kroll could not use the term "Kroll" alone or in combination with any other word or indicia in connection with any business, goods, or services that compete *with any aspect* of Kroll's business.

22.    Though Jules Kroll could have elected to keep the KROLL name in the sale of his business, he willingly sold his future right to use the name "Kroll" as a trademark and reaped the benefit of being paid personally over $100 million of the proceeds from the sale.  In exchange, he accepted strict prohibitions on how he could use the "Kroll" name and marks in the future. Nevertheless, he resented—and refused to respect—the limitation by which he agreed to abide.  As a result, he embarked on a decades-long, disruptive campaign to reclaim the KROLL brand.

23.    In 2008, Jules Kroll terminated his employment with Kroll in an unsuccessful bid to re-purchase the Kroll business.  He failed, and as a result, Jules Kroll decided to compete directly with the Kroll business.  In or around 2010, Jules Kroll founded Defendant K2 Intelligence, LLC and Kroll Bond Rating Agency LLC.  K2 Intelligence, now K2 Integrity, is a risk, compliance, investigations, monitoring, and advisory services firm and Kroll Bond Rating Agency LLC is a credit-rating agency.  On information and belief, K2 Intelligence was intended to compete directly with Kroll, providing risk consulting and investigations for global companies.  Since 2009, Jeremy Kroll (son of Jules Kroll) has worked as the President and co-CEO of K2.

24.    Shortly thereafter, notwithstanding the clear prohibitions in his Employment Agreement, Jules Kroll began using the KROLL mark in connection with Kroll Bond Rating Agency

and K2 Intelligence.  After being challenged by Kroll, on July 16, 2013, Kroll, Inc. (now known as Kroll HoldCo, LLC) and Kroll Associates, Inc. entered into a settlement agreement (the "Settlement Agreement") with Kroll Bond Rating Agency, K2 Intelligence, and Jules Kroll.  The Settlement Agreement placed additional limitations on Defendants' use of "Kroll" as a business name and as a trademark in connection with the K2 businesses.

25.     The Settlement Agreement prevented Defendants from using the "Kroll" name except in very limited circumstances and prohibits use of the name as any trademark or tagline associated with these businesses.  Specifically, K2 and Jules Kroll were permitted to use the term "Kroll" only when naming or providing a biography of Jules Kroll as an individual or in a disclaimer on K2's website and other marketing materials.  But the agreement prohibits the term "Kroll," or the names "Jules Kroll" or "Jeremy Kroll," from being used in any *trademark* and from being used to directly reference the history and business activities of Kroll.

26.     The limitations of the Settlement Agreement protected the reputation and brand of the Kroll business, built upon years of growth and market leadership that expanded the business after it was sold by Jules Kroll back in 2004.  The limitations were also necessary to prevent confusion in the marketplace between Jules Kroll's new investigations businesses, on the one hand, and the company he sold decades earlier and that became the global business that today is part of Kroll, on the other hand.

27.     In 2016, Jules Kroll struck again.  At that time, through his firms Kroll Bond Rating Agency and K2 Intelligence, Jules Kroll began using the KROLL mark throughout the K2 Intelligence website, in violation of Jules Kroll's Employment Agreement and the later Settlement Agreement.  Kroll once again challenged this infringing use of the KROLL mark as a calculated and deliberate breach of the Settlement Agreement.   And once again, in response, K2 Intelligence

relented.  To resolve the dispute, K2 Intelligence modified or deleted the website statements that used the term "Kroll" or otherwise made a false association between the legacy Kroll business, on the one hand, and Jules Kroll's new business ventures, including K2 Intelligence, on the other.

**D.  Defendants' Intent to Breach the Parties' Contracts and Infringe Plaintiffs' Trademarks**

28.     Defendants' most recent attempt to infringe the KROLL brand is the most alarming and most galling because it would unfairly compete, and compete directly, with the investigations business Jules Kroll sold in 2004 for $1.9 billion.  Through this threatened conduct, Defendants will deprive Kroll of the full value of the rights of the business and the marks it owns, including undisturbed use of the "Kroll" name and trademark.

29.     Seeking to circumvent the contracts into which they entered, and take advantage of Plaintiffs' position in the marketplace, Defendants, through their counsel, sent a letter to Kroll on September 30, 2021.  In that letter, Defendants expressed their intention to use the word "Kroll," and the names "Jules Kroll and Jeremy Kroll," as part of a new trademark and tagline for K2.

30.     Specifically, Defendants stated they intended on adding a phrase on their website banner, letterhead, and published materials stating, "founded by Jules Kroll and Jeremy Kroll."

31.     Defendants' intended use is not for a biographical purpose nor any of the other limited exceptions to the prohibited uses of the "Kroll" name.  Instead, Defendants' intended use—which combines the "Kroll" name with the existing K2 logo—creates a new trademark and tagline, which is a clear violation of the Settlement Agreement.  While Jules Kroll was permitted to use his name in biographical information about himself, Defendants' intended use crosses the line by incorporating the word "Kroll" into a new trademark and tagline for K2.  Defendants' intended use is, thus, an attempt to regain use of the KROLL brand, thinly disguised as a limited biographical use available under the Settlement Agreement.

32.     The intended use also directly infringes Plaintiffs' common law and federal trademark rights in the KROLL Marks.

33.     Kroll, by and through counsel, responded on October 11, 2021, informing Defendants that K2's use of the word "Kroll" as stated would violate both the Employment Agreement and the Settlement Agreement.

34.     Defendants responded on October 15, 2021, disputing that the Employment Agreement governed Defendants' conduct, and stating that notwithstanding the express terms of the Settlement Agreement, they would proceed to use the word "Kroll" as part of a new trademark and tagline on their website, letterhead, and published materials commencing on November 8, 2021.

35.     Defendants argued that the new tagline and trademark, which would be brandished broadly in Defendants' digital and printed media, fit the limited exception permitting the name "Kroll" to be used as part of the names "Jules Kroll" or "Jeremy Kroll" or the personal biography of Jules Kroll.  That position defies the plain meaning of the Settlement Agreement.  It is also plainly unnecessary, given the multiple biographies of Jules Kroll that appear on Defendants' website, LinkedIn page, magazine articles, and elsewhere.  Indeed, a recent Time magazine feature article provided a rich biography of Jules Kroll, the "world's most famous private detective."  Simon Shuster, *The World's Most Famous Private Detective Makes No Apologies*, Time (Sept. 10, 2021, 7:00 AM), https://time.com/6095957/jules-kroll-private-detective-profile/.  Notably, the article reports Jules Kroll lamenting that "I now compete against my own name."

36.     Defendants have ignored Plaintiffs' demand to comply with the terms of the Employment Agreement and Settlement Agreement and have made clear their intention to adopt the name "Kroll" as a new trademark and tagline in breach of contract and in violation of Plaintiffs' rights.

### C.  Plaintiffs' Harm

37.     Kroll's success comes after more than 17 years of growth and evolution in the marketplace through several sales and acquisitions.  To allow Defendants to proceed with using the "Kroll" name in a way that directly breaches the agreements into which they entered will create consumer confusion, to the detriment of not only the public, but to Plaintiffs and the goodwill associated with the KROLL Marks.

38.     Specifically, Defendants' intended use of the "Kroll" name, which wholly incorporates the KROLL mark, would create a new trademark that is confusingly similar to the KROLL Marks, which have priority over Defendants' intended use.

39.     Plaintiffs have not authorized Defendants' use of the KROLL mark, and Defendants' intended use of "Kroll" as a new trademark in connection with the K2 business will result in Defendants unfairly and unlawfully benefitting from the goodwill inherent in Plaintiffs' KROLL Marks.

40.     This breach of the contract still in effect will cause Plaintiffs to suffer damages and reputational losses due to Defendants' refusal to honor the terms of the written commitments Defendants made.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION: FEDERAL TRADEMARK INFRINGEMENT UNDER LANHAM ACT § 32(1)(a), 15 U.S.C. § 1114(1)

41.     Plaintiffs reallege and incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further allege as follows:

42.     Through use and registration, Kroll HoldCo, LLC owns United States Trademark Registration Nos. 1948659, 5740254, 5734353, and 2906977 for the KROLL Marks.

43.     The registered KROLL Marks have priority over Defendants' intended use of the term "Kroll" in connection with the business of K2.

44.     Defendants' intended use of the "Kroll" name is confusingly similar to the KROLL Marks, in appearance, sound, connotation and overall commercial impression.

45.     Neither plaintiff has authorized Defendants to use the KROLL Marks and Defendants' intended use of "Kroll" as stated in their October 15, 2021 letter will result in K2 unfairly and unlawfully benefitting from the goodwill inherent in the KROLL Marks.

46.     Defendants' intended use of the "Kroll" name is likely to cause confusion or mistake with the Plaintiffs' KROLL Marks, or to deceive as to source, affiliation, or sponsorship with Kroll Holdco, LLC, in violation of the Lanham Act, 15 U.S.C. § 1114.

47.     Kroll Holdco, LLC is likely to be damaged by Defendants' infringement in an amount to be determined at trial.

48.     As a direct and proximate result of Defendants' intended wrongful conduct, Kroll HoldCo, LLC will be irreparably injured and damaged, and unless Defendants have been enjoined by this Court, Kroll HoldCo, LLC will suffer harm to its name, reputation, and goodwill.  This harm constitutes an injury for which Kroll HoldCo, LLC has no adequate remedy at law.

49.     On information and belief, Defendants will act willfully, deliberately, intentionally and with bad faith to usurp Kroll HoldCo, LLC's rights, making this an exceptional case, and Defendants should be held liable for treble damages and attorney's fees pursuant to 15 U.S.C. § 1117(a).

### SECOND CAUSE OF ACTION:
### FEDERAL UNFAIR COMPETITION UNDER 15 U.S.C. § 1125(A)

50.     Plaintiffs reallege and incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further allege as follows:

11

51.     Plaintiffs have common law and federal trademark rights in the KROLL Marks, which are uniquely associated with Plaintiffs as a source of the goods and services offered in connection with the KROLL Marks.

52.     The KROLL Marks have priority over Defendants' intended use of the term "Kroll" in connection with the business of K2.

53.     Plaintiffs have not authorized Defendants to use the KROLL Marks and Defendants' intended use of "Kroll" as a new trademark, as stated in their October 15, 2021 letter, will result in Defendants unfairly and unlawfully benefitting from the goodwill inherent in Plaintiffs' KROLL Marks.

54.     Defendants' use of "Kroll" as stated in their October 15, 2021 letter would be confusingly similar to the KROLL Marks in appearance, sound, connotation and overall commercial impression, and constitutes unfair competition.

55.     Defendants' intended use of the "Kroll" name is likely to cause confusion or mistake with the KROLL Marks, or to deceive as to source, affiliation, or sponsorship with Plaintiffs, in violation of the Lanham Act, 15 U.S.C. § 1125(a).

56.     Plaintiffs are likely to be damaged by Defendants' infringement in an amount to be determined at trial.

57.     As a direct and proximate result of Defendants' threatened wrongful conduct, Plaintiffs will continue be irreparably injured and damaged, and unless Defendants have been enjoined by this Court, Plaintiffs will suffer harm to their name, reputation, and goodwill. This harm constitutes an injury for which Plaintiffs have no adequate remedy at law.

58.     On information and belief, Defendants have acted willfully, deliberately, intentionally and with bad faith to usurp Plaintiffs' rights, making this an exceptional case, and

Defendants should be held liable for treble damages and attorney's fees pursuant to 15 U.S.C. § 1117(a).

## THIRD CAUSE OF ACTION: DECLARATORY AND INJUNCTIVE RELIEF FOR BREACH OF CONTRACT

59.     Plaintiffs reallege and incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further allege as follows:

60.     The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, allows this Court to declare the rights and other legal relations of the parties to this dispute.

61.     An actual controversy has arisen and now exists between Plaintiffs and Defendants concerning their rights and obligations under the contractual agreements restricting Defendants' use of the "Kroll" name and infringement of the KROLL Marks.

62.     Among other things, Section 3 of the Settlement Agreement, which remains in full force and effect, expressly prohibits Defendants from using the term "Kroll" in connection with the business of K2, except (i) as part of the names "Jules Kroll" and/or "Jeremy Kroll"; (ii) as part of the biographical information of employees who were previously employed with Kroll or (iii) as part of the disclaimer referenced in Section 4.

63.     Defendants' intended use of word "Kroll" as part of a new trademark and tagline on their website, letterhead, and published materials, as set forth in Defendants' September 30, 2021 and October 15, 2021 letters, will constitute a breach of contract.

64.     Moreover, Section 11 of the Settlement Agreement provides for injunctive relief should either party breach or threaten a breach of any obligation under the agreement.

65.     As described above, Defendants dispute their restrictions under the Employment Agreement and the Settlement Agreement.

13

66.     There exists an actual controversy between the parties within the jurisdiction of this Court as to whether Defendants' intended use of "Kroll" would be a breach under the terms of the Employment Agreement and/or the Settlement Agreement.

67.     Plaintiffs therefore seek a declaration of Defendants' respective rights, restrictions, and duties under the agreements and request the Court declare Defendants' intended use of "Kroll" unlawful and in material breach of contract so that future controversies may be avoided.

68.     Pursuant to the parties' respective rights and duties under the Agreements, Plaintiffs further seek an injunction enjoining Defendants from (1) using the term "Kroll" as or within any trademark, including under the K2 Integrity banner on its website, letterhead, and published materials; and (2) ordering Defendants to comply with the terms of the agreements, including, without limitation, Section 3 of the Settlement Agreement, which expressly prohibit Defendants from using the term "Kroll," and the names "Jules Kroll" or "Jeremy Kroll," in any trademark.

**FOURTH CAUSE OF ACTION: ANTICIPATORY BREACH OF CONTRACT UNDER NEW YORK COMMON LAW**

69.     Plaintiffs reallege and incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further allege as follows:

70.     The parties entered into a series of fully integrated, binding, and valid contractual agreements restricting Defendants' use of the KROLL Marks.

71.     The Agreements were supported by consideration, and throughout all relevant time periods, Plaintiffs have complied with all their material obligations under the Agreements.

72.     Among other things, Section 3 of the Settlement Agreement, which remains in full force and effect, expressly prohibits Defendants from using the term "Kroll" in connection with the business of K2, except (i) as part of the names "Jules Kroll" and/or "Jeremy Kroll"; (ii) as part of

the biographical information of employees who were previously employed with Kroll or (iii) as part of the disclaimer referenced in Section 4.

73.     Defendants' intended use of word "Kroll" as part of a new trademark and tagline on their website, letterhead, and published materials, as set forth in Defendants' September 30, 2021 and October 15, 2021 letters, will constitute a breach of contract.

74.     As a result of Defendants' anticipated breach of contract, Plaintiffs will suffer actual damages and reputational losses due to Defendants' refusal to honor their contractual promises.

75.     Plaintiffs seek an injunction enjoining Defendants from (1) using the term "Kroll" as or within any trademark, including under the K2 Integrity banner on its website, letterhead, and published materials; and (2) ordering Defendants to comply with the terms of the agreements—specifically Section 7 of the Employment Agreement and Section 3 of the Settlement Agreement, which expressly prohibit Defendants from using the term "Kroll," and the names "Jules Kroll" or "Jeremy Kroll," in any trademark.

## FIFTH CAUSE OF ACTION: DECLARATORY AND INJUNCTIVE RELIEF FOR TRADEMARK INFRINGEMENT

76.     Plaintiffs reallege and incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further allege as follows:

77.     The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, allows this Court to declare the rights and other legal relations of the parties to this dispute.

78.     An actual controversy has arisen and now exists between Plaintiffs and Defendants concerning whether Defendants' intended use of the "Kroll" name in connection with the business of K2 constitutes trademark infringement.

79.     Through use and registration, Plaintiffs co-own the KROLL Marks, which are registered with the United States Patent and Trademark Office under Registration Nos. 1948659, 5740254, 5734353, and 2906977.

80.     Plaintiffs' use and registration of the KROLL Marks have priority over Defendants' use of the term "Kroll" in connection with the business of K2.

81.     Defendants' intended use of the "Kroll" name is confusingly similar to Plaintiffs' KROLL Marks, in appearance, sound, connotation and overall commercial impression.

82.     Plaintiffs have not authorized Defendants to use the KROLL Marks and Defendants' intended use of "Kroll" as part of a new trademark as stated in their September 30, 2021 and October 15, 2021 letters will result in K2 unfairly and unlawfully benefitting from the goodwill inherent in Plaintiffs' KROLL Marks.

83.     Defendants' intended use of the "Kroll" name is likely to cause confusion or mistake with the Plaintiffs' KROLL Marks, or to deceive as to source, affiliation, or sponsorship with Plaintiffs, in violation of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a).

84.     As described above, there exists an actual controversy between the parties within the jurisdiction of this Court as to whether Defendants' intended us of the "Kroll" name in connection with the business K2 constitutes trademark infringement.

85.     Plaintiffs therefore seek a declaration that Defendants' intended us of the "Kroll" name in connection with the business K2 constitutes trademark infringement so that future controversies may be avoided.

86.     Pursuant to Plaintiffs' rights in the KROLL Marks and Defendants' duties, Plaintiffs further seek an injunction enjoining Defendants from using the term "Kroll" as or within any

trademark, including under the K2 Integrity banner on its website, letterhead, and published materials.

## SIXTH CAUSE OF ACTION:
### TRADEMARK INFRINGEMENT UNDER NEW YORK GENERAL BUSINESS LAW § 360-K

87.    Plaintiffs reallege and incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further allege as follows:

88.    Plaintiffs own the KROLL Marks through use and registration.

89.    Plaintiffs' KROLL Marks have priority over Defendants' use of the term "Kroll" in connection with the business of K2.

90.    Defendants' intended use of the "Kroll" name is confusingly similar to Plaintiffs' KROLL Marks, in appearance, sound, connotation and overall commercial impression.

91.    Plaintiffs have not authorized Defendants to use the KROLL Marks and Defendants' intended use of "Kroll" as stated in their September 30, 2021 and October 15, 2021 letters will result in K2 unfairly and unlawfully benefitting from the goodwill inherent in Plaintiffs' KROLL Marks.

92.    Defendants' intended use of the "Kroll" name is likely to cause confusion or mistake with the Plaintiffs' KROLL Marks, or to deceive as to source, affiliation, or sponsorship with Plaintiffs, in violation of N.Y. Gen. Bus. Law §360-K.

93.    Plaintiffs are likely to be damaged by Defendants' infringement in an amount to be determined at trial.

94.    As a direct and proximate result of Defendants' threatened wrongful conduct, Plaintiffs will be irreparably injured and damaged, and unless Defendants have been enjoined by this Court, Plaintiffs will suffer harm to their name, reputation, and goodwill.  This harm constitutes an injury for which Plaintiffs have no adequate remedy at law.

## SEVENTH CAUSE OF ACTION:
## DECEPTIVE ACTS AND PRACTICES UNDER NEW YORK GENERAL BUSINESS
## LAW § 349

95.     Plaintiffs reallege and incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further allege as follows:

96.     Defendants, through their intended use of "Kroll," as stated in their September 30, 2021 and October 15, 2021 letters, in connection with the conduct of their business, trade, and commerce, and in the furnishing of their services to consumers, will materially mislead consumers about the origin, sponsorship, or source of their business and services.

97.     These violations will injure Plaintiffs and the public by causing deception, confusion, and damage in an amount to be determined at trial.

98.     As a result of Defendants' actions, Defendants will cause irreparable harm to Plaintiffs and the goodwill associated with the KROLL Marks, for which Plaintiffs have no adequate remedy at law.  Plaintiffs are entitled to, inter alia, injunctive relief.

99.     Defendants' actions as described above constitute deceptive acts and practices in violation of N.Y. Gen. Bus. Law § 349.

## EIGHTH CAUSE OF ACTION:
## UNFAIR COMPETITION UNDER NEW YORK COMMON LAW

100.     Plaintiffs reallege and incorporate by reference each and every paragraph of this Complaint as if fully set forth herein and further allege as follows:

101.     Defendants, through their intended use of "Kroll" as stated in their September 30, 2021 and October 15, 2021 letters in connection with the conduct of their business, trade, commerce, and in the furnishing of their services to consumers, will materially mislead consumers about the origin, sponsorship, or source of their products and services.

102.    These violations will injure Plaintiffs and the public by causing deception, confusion, and damage in an amount to be determined at trial.

103.    As a result of Defendants' intended actions, Defendants will cause irreparable harm to Plaintiffs and the goodwill associated with the KROLL Marks, for which Plaintiffs have no adequate remedy at law.  Plaintiffs are entitled to, inter alia, injunctive relief.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE,  Plaintiffs demand judgment against Defendants on each of the above referenced claims and causes of action as follows:

a.    Ordering Plaintiffs be awarded damages (including but not limited to compensatory damages, lost profits, lost fees, and disgorgement of Defendants' profits and developer fees) pursuant to the Lanham Act, 15 U.S.C. §1117(a));

b.    Ordering Plaintiffs be awarded treble damages pursuant to the Lanham Act, 15 U.S.C. § 1117; and exemplary damages, in an amount to be determined by jury, because of Defendants' willful conduct;

c.    Granting  a  permanent  injunction  enjoining  and  restraining Defendants, their employees, representatives, agents, and all persons or entities acting in concert with them, during the pendency of this action and thereafter perpetually, pursuant to pursuant to Section 34 of the Lanham Act, 15 U.S.C. § 1116, from using the term "Kroll" as or within any trademark, including under the K2 Integrity banner on its website, letterhead, and published materials;

d.    Declaring that Defendants' intended use of "Kroll" in a new trademark as set forth in their September 30, 2021 and October 15, 2021 letters would

amount to a breach of one or more agreements that Defendants executed pursuant to 28 U.S.C. §§ 2201 and 2202;

e.      Declaring that Defendants' intended use of "Kroll" in a new trademark as set forth in their September 30, 2021 and October 15, 2021 letters would amount to trademark infringement of the KROLL Marks pursuant to 28 U.S.C. §§ 2201 and 2202;

f.      Ordering Plaintiffs be awarded damages for Defendants' breach of contract;

g.      Ordering that Defendants and all those acting in concert or participation with them take affirmative steps to dispel such confusion that heretofore have been created by their unlawful activities, including, but not limited to, corrective advertising;

h.      Ordering that Defendants and all those acting in concert or participation with them take affirmative steps to prevent any confusion that may be created by Defendants' unlawful activities, including, but not limited to, recalling from U.S. commerce all products, packaging, labels, advertisements, promotional materials, publications, broadcasts, or any other media that uses or displays the KROLL Marks or the phrase "Founded by Jules Kroll and Jeremy Kroll" that is otherwise enjoined hereby;

i.      Ordering that Defendants file with the Court and serve on counsel for Plaintiffs within thirty (30) days after entry of any injunction issued by the Court in this action, a sworn written statement pursuant to 15 U.S.C. § 1116(a) setting forth in detail the manner and form in which Defendants have complied with any injunction that the Court may enter in this action;

j.      Awarding exemplary damages and attorney's fees and costs pursuant to N.Y. Gen. Bus. Law §§349 and 360-K;

k.      Awarding the costs and expenses of this litigation and these proceedings to Plaintiffs;

l.      Awarding reasonable attorney's fees and costs to Plaintiffs as provided by the law and pursuant to Section 10 of the Settlement Agreement;

m.      Awarding pre-judgment and post-judgment interest to Plaintiffs; and

n.      Granting to Plaintiffs all other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all counts and as to all issues.

Dated: November 2, 2021
New York, New York

Respectfully submitted,

*s/ Michael S. Elkin*

Michael S. Elkin
Cesie C. Alvarez
Yoav E. Gaffney
WINSTON & STRAWN LLP
200 Park Ave.
New York, NY 10166
Tel.: (212) 294-6700
MElkin@winston.com
CAlvarez@winston.com
YGaffney@winston.com

Stephen V. D'Amore
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
Tel.: (312) 558-5600
SDAmore@winston.com

Laura M. Franco
WINSTON & STRAWN LLP
101 California Street
San Francisco, CA 94111
Tel.: (415) 591-1000
LFranco@winston.com

*Counsel for Plaintiffs, Kroll, LLC (f/k/a Duff & Phelps, LLC) and Kroll HoldCo, LLC (f/k/a Kroll, LLC)*