**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

KROLL, LLC (F/K/A DUFF & PHELPS, LLC) and
KROLL HOLDCO, LLC (F/K/A KROLL, LLC),

                *Plaintiffs*,

     v.

K2 INTEGRITY HOLDINGS, INC., K2
INTELLIGENCE, LLC and JULES KROLL

               *Defendants*.

Case No. 1:21–cv–9037 (JSR)

---

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>DEFENDANTS' MOTION TO DISMISS COMPLAINT</u>

KOBRE & KIM LLP
Zachary D. Rosenbaum
Steven G. Kobre
George Stamatopoulos
800 Third Ave, 6th Floor
(212) 488 1200

*Counsel for Defendants K2 Integrity
Holdings, Inc., K2 Intelligence, LLC, and
Jules Kroll*

**Table of Contents**

INTRODUCTION ................................................................................................................. 1

RELEVANT BACKGROUND ............................................................................................ 3

    I.     The Operative Agreement. ................................................................................. 3

    II.    The Pre-Litigation Letters. ................................................................................ 6

    III.   The Lawsuit. ....................................................................................................... 8

LEGAL STANDARD ......................................................................................................... 10

ARGUMENT ....................................................................................................................... 11

    I.     Plaintiffs' Third and Fourth Causes of Action for Breach of Contract Fail to State a Claim, which in turn Disposes of Their Entire Case. .......................................... 11

        A.    The Settlement Agreement Unambiguously Permits K2 to Use the Phrase "Founded by Jules Kroll and Jeremy Kroll." ......................................................... 11

        B.    The Phrase "Founded by Jules Kroll and Jeremy Kroll" is not a Trademark Use of "Kroll" by K2 INTEGRITY in Any Event. ......................................................... 14

    II.    Plaintiffs Fail to State a Claim for Trademark Infringement and Unfair Trade Practices or Competition. ...................................................................................... 18

        A.    Plaintiffs' Claims Collapse Under the Settlement Agreement. .................... 18

        B.    Plaintiffs Have Failed to Adequately Allege a Likelihood of Confusion. ............... 20

        C.    "Founded by Jules Kroll and Jeremy Kroll" Is a "Fair Use" of "Kroll." .................. 21

    III.   KROLL Failed to Adhere to the Settlement Agreement's Dispute Resolution Provision, which is yet Another Independent Reason for Dismissal. ..................................... 23

CONCLUSION .................................................................................................................... 25

## Table of Authorities

**Cases**

*Alzheimer's Found. of Am., Inc. v. Alzheimer's Disease and Related Disorders Ass'n., Inc.*,
No. 10–CV–3314, 2018 WL 2084168 (S.D.N.Y. May 1, 2018) ...................................... 19

*Applied Energetics, Inc. v. NewOak Capital Mkts., LLC*, 645 F.3d 522 (2d Cir. 2011) ............. 12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................... 10, 15

*B&L Sales Assocs. v. H. Daroff & Sons, Inc.*, 421 F.2d 352 (2d Cir. 1970) ............................... 22

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................ 10

*Bernstein v. O'Reilly*, 307 F.Supp.3d 161 (S.D.N.Y. 2018) ........................................... 4

*Car–Freshner Corp. v. S.C. Johnson & Son, Inc.*, 70 F.3d 267 (2d Cir.1995) ..................... 16, 22

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) ..................................... 17

*Clorox Co. v. Sterling Winthrop, Inc.*, 117 F.3d 50 (2d Cir.1997) ......................................... 12, 18

*Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42 (2d Cir. 1991) ......................... 10

*Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co.*,
125 F.3d 28 (2d Cir. 1997)............................................................................ 16, 23

*Dessert Beauty, Inc. v. Fox*, 568 F. Supp. 2d 416 (S.D.N.Y. 2008)
*aff'd*, 329 App'x 333 (2d Cir. 2009)................................................................ 16, 22

*Deutsch v. Pressler*, No. 21–CV–84, 2021 WL 1619505 (S.D.N.Y. April 26, 2021)................. 17

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 261 F. Supp.2d 293 (S.D.N.Y. 2003).... 24

*Edwards v. Sequoia Fund, Inc.*, 938 F.3d 8 (2d Cir. 2019) ........................................... 11

*EMA Fin., LLC v. NFusz, Inc.*, 509 F. Supp. 3d 18 (S.D.N.Y. 2020)........................... 18

*EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*,
228 F.3d 56 (2d Cir. 2000)........................................................................ 15, 22

*First Serv. Fin. Inc. v. City Lights at Queens Landing, Inc.*,
No–08–CV-3312 2009 WL 750190 (S.D.N.Y. Mar. 20, 2009) ...................................... 11

*Gayle v. Hearst Commc'ns, Inc.*, No. 19–CV–4699,
    2021 WL 293237 (S.D.N.Y. Jan. 28, 2021) ...................................................... 17

*Gottlieb Dev. LLC v. Paramount Pictures Corp.*, 590 F. Supp. 2d 625 (S.D.N.Y. 2008)........... 21

*Greenfield v. Philles Recs., Inc.,* 98 N.Y.2d 562 (2002) ............................................... 13

*Gucci v. Gucci Shops, Inc.*, 688 F. Supp. 916 (S.D.N.Y. 1988)..................................... 17

*ISS Facility Servs., Inc. v. Fedcap Rehab. Servs., Inc.*,
    No. 20–CV–6591, 2021 WL 2784550 (S.D.N.Y. July 2, 2021)...................................... 24

*J. Longoson v. Pyramid Co. of Onondaga*, 435 F. 3d 110 (2nd Cir. 2006)................................... 4

*JA Apparel Corp. v. Abboud*, 568 F.3d 390 (2d Cir. 2009) ......................................... 15

*JA Apparel Corp. v. Abboud*, 682 F.Supp.2d 294 (S.D.N.Y. 2010) ..................................... passim

*Kelly-Brown v. Winfrey*, 717 F.3d 295 (2d Cir. 2013)................................................. 22

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111 (2004)...................... 22

*Louis Vuitton Malletier S.A. v. Warner Bros. Entm't Inc.*,
    868 F. Supp. 2d 172 (S.D.N.Y. 2012)....................................................... 21, 22

*Matter of Wallace v. 600 Partners Co.*, 86 N.Y.2d 543 (1995)............................................ 11, 13

*McKenna v. Wright*, 386 F.3d 432 (2d Cir. 2004) ................................................... 22

*Negrete v. Citibank, N.A.*, 759 F. App'x 42 (2d Cir. 2019) ......................................... 24

*Paolo Gucci v. Gucci Shops, Inc.*, 688 F. Supp. 916 (S.D.N.Y. June 17, 1988) ........................... 8

*People v. Rodriguez*, 123 N.E.3d 255 (N.Y. 2019) ..................................................... 13

*Peterson v. Regina*, 935 F. Supp. 2d 628 (S.D.N.Y. 2013) ........................................... 13

*Pierce v. F.R. Tripler & Co.*, 955 F.2d 820 (2d Cir. 1992) ......................................... 18

*Powell v. Omnicom*, 497 F.3d 124 (2d Cir.2007) ....................................................... 13

*Richemont North American, Inc. v. Huang*,
    No. 12–CV–4443, 2013 WL 534814 (S.D.N.Y. Sept. 24, 2013) ..................................... 19

*Roth v. Jennings*, 489 F.3d 499 (2d Cir. 2007) ....................................................... 10, 14

*Savin Corp. v. Savin Grp.*, 391 F.3d 439 (2d Cir. 2004) ............................................................. 20

*TechGuru Consultants, Inc. v. Tech Guru LLC*,
     No. 16–CV–8777, 2021 WL 533507 (S.D.N.Y. February 12, 2021) ............................... 4

*Times Mirror Mags, Inc. v. Field & Stream Licenses Co.*,
     294 F.3d 383 (2nd Cir. 2002) ................................................................... 12, 19

*United States v. Mermelstein*, No. 05–CR–37,
     2008 WL 11435684 (E.D.N.Y. Oct. 28, 2008) ................................................. 4

*Vermont Teddy Bear Co. v. 538 Madison Realty Co.*, 1 N.Y.3d 470 (2004) ........................ 11, 14

*W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157 (1990) ...................................... 11

*XYZ Two Way Radio Service, Inc. v. Uber Technologies, Inc.*, 214 F. Supp. 3d 179 (E.D.N.Y.
     2016) ............................................................................................................ 11

## Statutes

15 U.S.C.  §1115(b) ........................................................................................ 22

15 U.S.C. § 1114 ..................................................................................... 19, 22

15 U.S.C. § 1114(1)(a) ............................................................................... 19

15 U.S.C. § 1125(a) ................................................................................... 19, 22

28 U.S.C. §§ 2202 ....................................................................................... 19

## Other Authorities

Charles Alan Wright and Kenneth W. Graham, Jr., Federal Practice and Procedure § 5314
     Exceptions—Other Permissible Uses, 23 Fed. Prac. & Proc. Evid. § 5314 (2d ed.)................ 18

## Rules

Fed. R. Civ. P. 12(b)(6) .................................................................................. 1

Fed. R. Ev. 106 ........................................................................................... 18

Fed. R. Ev. 408 ........................................................................................... 18

Defendants K2 Integrity Holdings, Inc., K2 Intelligence (together "K2" or "K2 INTEGRITY"), and Jules Kroll (together with K2, "Defendants") respectfully submit this Motion to Dismiss the Complaint filed by Plaintiffs Kroll, LLC and Kroll HoldCo, LLC (together "KROLL" or "Plaintiffs") pursuant to Fed. R. Civ. P. 12(b)(6).

## INTRODUCTION

Conspicuously, the Complaint does not append or even include block quotations from the parties' operative agreement or the letters that preceded this action. Instead, Plaintiffs spin a false narrative by distorting plain and unambiguous contractual terms and omitting others altogether. With the benefit of the full text of these writings, the Court can easily dispose of this case and dismiss the Complaint in its entirety, because K2's intended inclusion of the phrase "Founded by Jules Kroll and Jeremy Kroll" on its website and other media is squarely permitted by the parties' 2013 Settlement Agreement (the "Settlement Agreement").

The parties indeed specifically agreed eight years ago that K2 can "in connection with [its] business," use "the name or trademark 'Kroll'" as "part of the names 'Jules Kroll' and/or 'Jeremy Kroll.'" *See* Rosenbaum Decl., Ex. A, at 2–3, §§3a, 3c. The Court need go no further than this contractual provision to dismiss this action; though, notably, Plaintiffs also conveniently omit from their allegations that, since 2013, pursuant to the Settlement Agreement, K2 has included and will continue to include a disclaimer on its website stating that K2 *is not* KROLL. *Id.*, at 3, §4.

By expressly permitting K2's commercial use of its founders' first and last names, and coupling that right with the required disclaimer, the Settlement Agreement addresses exactly what K2 intends to do here: associate itself with its founders as individuals and ensure that neither K2 nor its founders are associated with KROLL. In trying to block K2's bargained-for right to

associate itself with its founders, it is KROLL that attempts to misappropriate the goodwill Jules Kroll and Jeremy Kroll as individuals built in K2 since its founding in 2010, not vice versa.

Plaintiffs' conclusory assertion that K2's identification of its founders is somehow purportedly a "new trademark" that infringes on the KROLL trademark cannot save this doomed Complaint. Whether used as a trademark or not—though this clearly is not trademark usage—the Settlement Agreement permits K2 to associate itself with its founders by using the word "Kroll" as "part of" their first and last names. The Court's inquiry again begins and ends with the Settlement Agreement and, thus, Plaintiffs' claims fail on that basis alone.

Further, and in any event, the descriptive phrase "Founded by Jules Kroll and Jeremy Kroll" that will be *beneath* the prominent K2 INTEGRITY trademark along with the disclaimer on K2's website is *not* part of a trademark. As Plaintiffs know, but fail to plead, K2's purpose for identifying its founders on its website and other media is to help ensure that market participants *do not* associate K2 or its founders with Duff & Phelps LLC ("Duff & Phelps"), which announced in 2021 that it is rebranding its entire organization as KROLL. There is in fact no way to identify the founders of K2 other than by their first and last names. Plaintiffs acknowledge as much by stating in their publicly filed Complaint that "Jules Kroll founded Defendant K2 []." Compl. at ¶ 23; *see also* Compl. at ¶ 8. The Court should dismiss Plaintiffs' sundry assertions of trademark infringement and other trade practice claims based on the face of the Complaint, the Settlement Agreement, and other documents referred to in the Complaint.

Finally, apart from Plaintiffs' distortion of the Settlement Agreement and failure to describe the existing disclaimer—which are dispositive—Plaintiffs also disregarded the Settlement Agreement's dispute resolution provision. While Plaintiffs banty trademark use and infringement about, they plead nothing regarding the font-size, format, or specific placement of

the descriptive phrase K2 intends to use relative to its registered trademark, K2 INTEGRITY. Plaintiffs know the significance of those factors in alleging trademark use and trademark infringement but instead of learning facts, they chose to plead fiction.

The Settlement Agreement required written notice by Plaintiffs "identifying [K2's alleged] breach with sufficient specificity" and additionally that they "amicably and expeditiously attempt to resolve the alleged breach or claim" for ten business days before they "may commence an action in a court of competent jurisdiction."  Rosenbaum Decl., Ex. A, at 4, § 10a.  While counsel exchanged letters before this action was instituted, Plaintiffs engaged in no *bona fide* pre-litigation discourse.  Had they done so, Plaintiffs would have seen that the phrase "Founded by Jules Kroll and Jeremy Kroll" will be positioned on K2's website well below the prominent K2 INTEGRITY trademark in a font size significantly smaller than the K2 INTEGRITY banner[1] and, of course, as Plaintiffs also know, the disclaimer will remain in place on the website stating that K2 *is not* KROLL.

In short, this case should be dismissed in its entirety for failure to state a claim upon which relief can be granted under Rule 12(b)(6).

## RELEVANT BACKGROUND

**I.    The Operative Agreement.**

In 2004, Jules Kroll and his partners sold the KROLL business to Marsh & McLennan Companies.  Compl. at ¶ 20.  In connection with that transaction, Jules Kroll and Kroll Inc. executed an Employment Agreement dated July 7, 2004 (the "Employment Agreement").  In 2008,

---

[1] K2 has provided Plaintiffs with an illustrative "mock-up" of its website, which K2 submits the Court may consider on this pleadings motion because the mock-up is integral to the Complaint's assertions of *anticipatory* infringement and breach.

Jules Kroll terminated his employment with KROLL and, in or about 2010, he founded two new companies: (1) K2 (then known as K2 Intelligence) with his son Jeremy Kroll, and (2) Kroll Bond Rating Agency, LLC ("KBR" or "Kroll Bond Rating Agency").  Compl. at ¶ 23.

In 2013, KROLL complained to Jules Kroll about Kroll Bond Rating Agency's and K2's use of the "Kroll" name.  Compl. at ¶ 24.  That dispute was settled without litigation through the Settlement Agreement, which was entered into among Jules Kroll, K2 Intelligence (n/k/a K2 INTEGRITY), Kroll Inc., Kroll Associates, Inc. and KBR.  Rosenbaum Decl., Ex. A.[2]

The Settlement Agreement memorializes the parties' agreement, *disjunctively*, that K2 will "not to use the name or trademark 'Kroll' in connection with" its business "*except* (i) as part of the names 'Jules Kroll' and/or 'Jeremy Kroll;' (ii) as part of the biographical information of employees

---

[2] While the Settlement Agreement contains a confidentiality clause in Section 9, the provision carves out disclosure "to enforce [its] terms." *Id.*, at 3, §9.  Further, the Settlement Agreement and letters surrounding this dispute are judicial documents that do not meet the Second Circuit's stringent requirements for sealing.  *See J. Longoson v. Pyramid Co. of Onondaga*, 435 F. 3d 110, 126 (2nd Cir. 2006) (holding that "documents submitted to a court in support of or in opposition to a motion for summary judgment are judicial documents to which a presumption of immediate public access attaches under both common law and the First Amendment"); *TechGuru Consultants, Inc. v. Tech Guru LLC*, No. 16–CV–8777, 2021 WL 533507 at *2–3 (S.D.N.Y. February 12, 2021); *Bernstein v. O'Reilly*, 307 F.Supp.3d 161, 167–68 (S.D.N.Y. 2018) (denying motion to seal documents in connection with motion to dismiss grounds, *inter alia*, that they pertained "to matters that directly affect the Court's adjudication") (internal citations and quotations omitted).  Moreover, Plaintiffs' purported characterizations of the Settlement Agreement and pre-litigation letters in their *publicly-filed* Complaint—while not even mentioning the Settlement Agreement's confidentiality clause or carve-out—further necessitate public access to these judicial documents and, likewise, constitute a waiver of any expectation of confidentiality by Plaintiffs in any event.  *See, e.g., United States v. Mermelstein*, No. 05–CR–37, 2008 WL 11435684, at *2 (E.D.N.Y. Oct. 28, 2008)  (by placing physical and mental health at issue in connection with "leniency at sentencing" defendant "subordinated his personal privacy interests to the powerful interests served by public access to judicial documents.")

who were previously employed with Kroll *or* (iii) as part of the disclaimer referenced in Section 4." Rosenbaum Decl., Ex. A at 2, §3a. (emphasis added). The Settlement Agreement, likewise, permits K2's use of "the name or trademark 'Kroll' on the homepage or any landing page of the website associated with K2" in accordance with the three *disjunctive* sub-sections in Section 3(a). *Id.* at 3, §3c (emphasis added). And, further, the Settlement Agreement memorializes K2's agreement "to add a disclaimer to every page of the … K2 website[] and marketing materials stating '[K2] is not affiliated with Kroll Inc., Kroll Associates, Inc., Kroll OnTrack, Inc. or their affiliated businesses.'" *Id.* at 3, §4.

> Specifically, Sections 3(a) and (c) and Section 4 of the Settlement Agreement state:
>
> > K2 agrees not to use the name or trademark "Kroll" in connection with the business of K2 *except (i) as part of the names "Jules Kroll" and/or "Jeremy Kroll;"* (ii) as part of the biographical information of employees who were previously employed with Kroll *or* (iii) as part of the disclaimer referenced in Section 4.
> >
> >        \* \* \*
> >
> > K2 agrees not to use the name or trademark "Kroll" on the homepage or any landing page of the website associated with K2, *except as permitted by Paragraph 3(a)*.
> >
> >        \* \* \*
> >
> > KBR and K2 *agree to add a disclaimer* to every page of the KBR and K2 websites and marketing materials stating *"[KBR or K2] is not affiliated with Kroll Inc., Kroll Associates, Inc., Kroll OnTrack, Inc. or their affiliated businesses*."

Rosenbaum Decl., Ex. A, at 2–3, §§3, 4 (emphasis added).

As to Kroll Bond Rating Agency, while not a party to this lawsuit or otherwise germane, the Settlement Agreement memorializes its right with certain agreed-upon restrictions to use "Kroll" without referencing the first names Jules or Jeremy. *Id*. at 2, §§ 1, 2. Kroll Bond Rating Agency also agreed to post a disclaimer on its website stating that Kroll Bond Rating Agency is not KROLL. *Id*. at 3, § 4.

The Settlement Agreement contains an integration clause in Section 20, stating:

> **Entire Agreement.** *This Agreement* constitutes the entire agreement and understanding between the Parties relating to the subject matter of the Agreement, whether oral or written, and it *supersedes, cancels, and replaces any and all prior agreements or understandings between the Parties pertaining to the subject matter of the Agreement.*

Rosenbaum Decl., Ex. A at 6, §20 (emphasis added).  The Settlement Agreement also contains a Dispute Resolution clause in Section 10, stating in relevant part:

> a.      If a Party believes that a breach of this Agreement has occurred, the aggrieved Party will notify the other Party in writing identifying the breach with sufficient specificity to allow the other Party to cure the same, and the other Party shall have ten (10) business days to do so.  Before the time for cure expires, the Parties will attempt to amicably and expeditiously resolve the alleged breach or claim. If the Parties are not able to resolve the dispute or a cure has not occurred, during the ten day cure period then the aggrieved Party may commence an action in a court of competent jurisdiction and apply for immediate injunctive or other appropriate relief available at law or equity at any time, with costs and attorneys' fees awarded to the prevailing party.

Rosenbaum Decl., Ex. A at 4, §10.

## II.    The Pre-Litigation Letters.

In 2018, KROLL was acquired by Duff & Phelps.  Compl. at ¶ 13.  Three years later, in 2021, Duff & Phelps began rebranding its entire business under the KROLL name.  *Id.*

After observing Duff & Phelps' efforts to rebrand as KROLL, on September 30, 2021, K2 through counsel wrote to Duff & Phelps' co-owner (the "September 30 Letter"), private equity firm Stone Point Capital LLC ("Stone Point").  Rosenbaum Decl., Ex. B.  K2 had a prior business relationship with Stone Point, having previously shared highly confidential business information with it pursuant to a confidentiality agreement that contemplated a potential equity investment by Stone Point in K2.  *See Id.*   In relevant part here, K2 stated to Stone Point:

> Under the "Kroll" masthead, D&P has moved well beyond the original business lines (*i.e.,* those developed by Jules Kroll and sold to D&P's predecessor in 2004).

* * * *

6

> ... [T]o further ensure K2's founders are not confused with D&P, K2 will be reaffirming that it was founded by Jules Kroll and Jeremy Kroll. Specifically, K2 will be adding the phrase "Founded by Jules Kroll and Jeremy Kroll" under the K2 Integrity banner on its website, letterhead, and published materials. Jules Kroll's and Jeremy Kroll's first and last names and biographical information— such as the fact that they are the founders of K2—are information that K2 is free to brandish, consistently with applicable law and K2's rights vis-à-vis Kroll (certain details of which are confidential).   The website and other banner changes will thus take effect on November 8, 2021.
>
> \* \* \* \*
>
> .. [U]nder StonePoint's and its partners' stewardship, D&P is using tag lines such as "*Kroll - New Vision. Same People.*" when, in fact, Jules Kroll and Jeremy Kroll are not affiliated with or employed by Kroll.

*Id.*, Ex. B.  K2 concluded the September 30 Letter by, among other things, asking that Stone Point provide the letter to Duff & Phelps.  *Id.*

Plaintiffs replied to the September 30 Letter through counsel on October 11, 2021 (the "October 11 Letter") contending—erroneously—that Jules Kroll's and K2's agreements "prohibit the use of the 'Kroll' name, including in reference to Jules Kroll or Jeremy Kroll" in connection with K2's business.  Rosenbaum Dec., Ex. C.  Notably, while the October 11 Letter identified both the Settlement Agreement and the earlier Employment Agreement, it quoted only the Employment Agreement, which was superseded on this subject by the Settlement Agreement.  *Id.*  The October 11 Letter then states, "a breach or threatened breach of these agreements entitles Kroll to immediate injunctive relief, among other remedies."  *Id.*

K2 replied by letter dated October 15, 2021 (the "October 15 Letter"), reminding Plaintiffs of: (i) the express terms of Section 3 of the Settlement Agreement, which plainly permit the phrase at issue; (ii) K2's disclaimer that "has been and will continue to be displayed on K2's website;" and (iii) the integration clause in Section 20 of the Settlement Agreement that says it "supersedes, cancels, and replaces any and all prior agreements or understandings between the Parties pertaining to the subject matter of the [Settlement] Agreement."  Rosenbaum Decl., Ex. D.

7

Additionally, K2 stated in the October 15 Letter:

> Not only is K2 permitted by contract with Kroll to associate Jules Kroll and
> Jeremy Kroll with K2, by using their first and last names—which itself is
> dispositive—but trademark law independently allows K2 to do so. *See, e.g.,*
> *Paolo Gucci v. Gucci Shops, Inc.*, 688 F. Supp. 916, 927 (S.D.N.Y. June 17,
> 1988) (stating that "Paolo Gucci is entitled to identify himself as the designer
> of products so long as he does so in a manner which will not lead an appreciable
> number of consumers to believe that his products are 'Gucci' products.")

*Id.*  K2 concluded the October 15 Letter, stating that it "will continue to adhere to its legal obligations

and may take further remedial measures as set forth in our September 20, 2021 letter."  *Id.*

## III.    The Lawsuit.

Plaintiffs did not respond in any manner to the October 15 Letter until, on November 2,

2021, they filed the Complaint in this action.  The Complaint sets forth eight causes of action:

(First) Federal Trademark Infringement under the Lanham Act; (Second) Federal Unfair

Competition; (Third) Declaratory and Injunctive Relief for Breach of Contract; (Fourth)

Anticipatory Breach of Contract under New York Common Law; (Fifth) Declaratory and

Injunctive Relief for Trademark Infringement; (Sixth) Trademark Infringement Under New York

General Business Law; (Seventh) Deceptive Acts and Practices under New York General Business

Law; and (Eighth) Unfair Competition under New York Common Law.

Plaintiffs' counsel sent our firm a "courtesy copy" of the Complaint in the evening on

November 2, 2021 and asked whether we would accept service for the Defendants.  Rosenbaum

Decl., Ex. E.  We informed Plaintiffs' counsel we would respond by that Friday, November 5.  *Id.*

By letter dated Friday November 5, 2021 (the "November 5 Letter"), our firm indicated that we

decline to accept service because Plaintiffs had failed to adhere to the dispute resolution provision

in Section 10 of the Settlement Agreement, resulting in a jurisdictionally defective case.

Rosenbaum Decl., Ex. G.  We instead stated that:

> We trust that, once your client engages with K2 Integrity as required by the Settlement Agreement and sees the format in which K2 Integrity will be deploying the identity of its founders, your client will acknowledge the frivolity of the lawsuit it has filed, withdraw it voluntarily, and issue a joint public statement.

*Id.*

On Monday, November 8, 2021, Plaintiffs formally served K2 with process though its registered agents in Delaware (Dkt. Nos. 14, 15) and attempted personal service on Jules Kroll at K2's offices.  Plaintiffs thereafter agreed to refrain for serving Jules Kroll individually if our firm agreed to accept service on his behalf 72 hours later.  We so agreed.   *See* Rosenbaum Decl., Ex. I.

On November 10, 2021, our firm sent Plaintiffs' counsel a letter (the "November 10 Letter") stating in pertinent part:

> Forestalling service on Jules Kroll for 72 hours after serving K2 Integrity on Monday certainly does not rectify this defect in your client's case, and we plan to respond accordingly.  Notwithstanding this, we enclose—by way of example as to content that is squarely permitted under the Settlement Agreement and applicable laws—a mock-up of K2 Integrity's website with the phrase "Founded by Jules Kroll and Jeremy Kroll." *See* Ex. A. We are providing this mock-up as an illustration, not a limitation as to the bounds of K2 Integrity's rights.

*Id.*, Ex. J.  The November 10 Letter appended as Exhibit A, a mock-up of K2's web-site with the phrase as shown below:



*Id.* (*see* Exhibit A to November 10 Letter).

The full version of the mock-up also shows the disclaimer that K2 has always displayed on its website, stating that "K2 Integrity is not affiliated with Kroll Inc., Kroll Associates, Inc., Kroll On Track, Inc. or their affiliated businesses." *Id.* Plaintiffs have not withdrawn the Complaint.

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere conclusory statements in a complaint and "formulaic recitation[s] of the elements of a cause of action" are not sufficient. *Twombly*, 550 U.S. at 555.

In considering a Rule 12(b)(6) motion, "the court may permissibly consider ... [d]ocuments that are attached to the complaint or incorporated in it by reference" which "are deemed part of the pleading." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). Likewise, the Court may consider material that "plaintiffs had either in [the plaintiffs'] possession or had knowledge of and upon which [the plaintiffs] relied in bringing suit." *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991). A court can also consider webpages on which a complaint relies in deciding a Rule 12(b)(6) motion. *See, e.g., XYZ Two Way Radio Service, Inc. v. Uber*

*Technologies, Inc.*, 214 F. Supp. 3d 179, 184 (E.D.N.Y. 2016) (considering webpages that allegedly contained false advertising).

## ARGUMENT

I.    **Plaintiffs' Third and Fourth Causes of Action for Breach of Contract Fail to State a Claim, which in turn Disposes of Their Entire Case.**

      A.    *The Settlement Agreement Unambiguously Permits K2 to Use the Phrase "Founded by Jules Kroll and Jeremy Kroll."*

Granting a motion to dismiss is appropriate "if the terms of the contract are unambiguous." *E.g., Edwards v. Sequoia Fund, Inc.*, 938 F.3d 8, 13 (2d Cir. 2019); *also First Serv. Fin. Inc. v. City Lights at Queens Landing, Inc.*, No–08–CV-3312 2009 WL 750190, at *2 (S.D.N.Y. Mar. 20, 2009) ("Where there is no ambiguity to a contract and the intent of the parties can be determined from the face of the agreement, interpretation is a matter of law, and a claim turning on that interpretation may be resolved on a motion to dismiss.") (internal citations and quotations omitted). A contractual term is unambiguous if it has "a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion." *Edwards*, 938 F.3d at 12.

Here, the Settlement Agreement is an integrated contract that is complete, clear and unambiguous on its face with respect to K2's use of the "name or trademark 'Kroll.'" The Settlement Agreement therefore "should as a rule be enforced according to its terms." *W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 162 (1990) (Kaye, J.). This is particularly true when the unambiguous terms were "'negotiated between sophisticated, counseled business people negotiating at arm's length.'" *Vermont Teddy Bear Co. v. 538 Madison Realty Co.*, 1 N.Y.3d 470, 475 (2004) (quoting *Matter of Wallace v. 600 Partners Co.*, 86 N.Y.2d 543, 548 (1995)). Accordingly, the Court need not look further than the Settlement Agreement to dismiss the Third

and Fourth Causes of Action, which erroneously contend that the challenged phrase would breach the parties' "Agreements."[3]

As explained in Point I.B., below, K2's intended use of the word "Kroll" as part of the phrase "Founded by Jules Kroll and Jeremy Kroll" *is not* a "new trademark" as Plaintiffs allege. The phrase is accurate, descriptive, biographical, and a decidedly *non*-trademark usage of the word "Kroll."  K2 indeed has a prominent, registered trademark: K2 INTERGITY.

That said, however, whether this descriptive phrase is a trademark usage of "Kroll" or not is irrelevant, because the phrase is permitted by the Settlement Agreement.  Parties are free to determine their rights with respect to the use of trademarks through valid and enforceable contracts like the Settlement Agreement.  For example, in *Times Mirror Mags, Inc. v. Field & Stream Licenses Co.*, 294 F.3d 383, 389-90 (2nd Cir. 2002), the Second Circuit affirmed the rejection of trademark infringement, false designation of origin, and unfair competition claims, finding that such claims were precluded by the parties' contracts.  (Internal citations and quotations omitted). *See also Clorox Co. v. Sterling Winthrop, Inc.*, 117 F.3d 50, 55 (2d Cir.1997) (finding that agreements in which two parties agree on their respective rights concerning a trademark are favored under the law).

---

[3] While Plaintiffs reference both the Employment Agreement and Settlement Agreement in their breach of contract causes of action (*see, e.g.*, Compl. at ¶¶ 65, 71, 75), among other places, the integration clause in the Settlement Agreement entered into nine years after the Employment Agreement, states that the Settlement Agreement "supersedes, cancels and replaces *any and all prior agreements* … pertaining to [its] subject matter[.]"  Rosenbaum Decl., Ex. A at 6, § 20. Thus, the Settlement Agreement governs the subject matter of this action.  *See id.* at 2-3, §§ 3, 4; *see also Applied Energetics, Inc. v. NewOak Capital Mkts., LLC*, 645 F.3d 522, 526 (2d Cir. 2011) (under New York law, where a "subsequent contract regarding the same matter" exists, it "will supersede the prior contract.").

Here, the question thus is not whether the phrase "Founded by Jules Kroll and Jeremy Kroll" is a trademark use of "Kroll"—though, again, it is not—the question is whether it is permitted by the Settlement Agreement.  The answer is plainly yes.  The parties agreed in the Settlement Agreement that K2 can use the word "'Kroll' *in connection with the business of K2*" (emphasis added) provided that it is "*part of* the names 'Jules Kroll' and/or 'Jeremy Kroll' [*or*] … biographical information of employees who were previously employed with Kroll.'"  *See* Rosenbaum Decl., Ex. A, at 2–3, §3a.  These contractual allowances specifically include such use on "the homepage and any landing page of the website associated with K2."  *Id*. at 4, §3c.

The Settlement Agreement is no different than other contracts bearing upon trademark rights.  *See Peterson v. Regina*, 935 F. Supp. 2d 628, 635 (S.D.N.Y. 2013) (citing *Powell v. Omnicom*, 497 F.3d 124, 128 (2d Cir.2007)) ("A settlement agreement is a contract that is interpreted according to general principles of contract law.").  It is "complete, clear, and unambiguous" as to K2's right to use "Kroll" as part of the names Jules Kroll and Jeremy Kroll, and therefore "must be enforced according to its terms."  *Greenfield v. Philles Recs., Inc.,* 98 N.Y.2d 562, 569 (2002).

Thus, ultimately, it does not matter whether the challenged phrase is part of a "new trademark and tagline," or any other conclusory labels Plaintiffs have conjured up.  What matters is that the phrase is permitted by the parties' Settlement Agreement.  It is.  Plaintiffs must live with the bargain struck eight years ago and cannot beseech the Court to impermissibly rewrite that bargain now.  *People v. Rodriguez*, 123 N.E.3d 255, 261 (N.Y. 2019) ("The absence of specific language referencing a particular promise ordinarily ends the inquiry as the court may not rewrite a contract to include terms the parties have expressly omitted"); *Wallace*, 86 N.Y.2d at 547-48;

*see also Vermont Teddy Bear*, 1 N.Y.3d at 472 ("[O]ur longstanding contract interpretation principles prohibit us from adding a missing term to an unambiguous [contract].").

Accordingly, the Court should dismiss Counts Three and Four of the Complaint which, as explained further in Point II.A., below, will also dispose of the balance of the Complaint.

### B.  The Phrase "Founded by Jules Kroll and Jeremy Kroll" is not a Trademark Use of "Kroll" by K2 INTEGRITY in Any Event.

Though irrelevant under the Settlement Agreement, if the Court were to indulge Plaintiffs' allegations of trademark use, those contentions would also fail as a matter of law.  Plaintiffs falsely allege in their breach of contract counts, based solely on the September 30 and October 15 Letters, an "intended use" by K2 "of the word 'Kroll' as part of a new trademark and tagline." *See e.g.,* Compl. at ¶¶ 63, 73.  Plaintiffs, however, never even asked K2 for an illustration depicting where or in want font size the phrase will be located relative to the prominent K2 INTEGRITY trademark. Instead, Plaintiffs filed a Complaint that mischaracterizes K2's stated intentions, which are *not to* use its founders' names as part of a "new trademark." *See* Rosenbaum Decl., Exs. B and C.[4]  To the contrary, as K2 informed Plaintiffs in the September 30 and October 15 Letters, the phrase will be located *under* the prominent K2 INTEGRITY trademark and accompanied on K2's website by the disclaimer that K2 *is not* KROLL.  *See id.*

Thus, when they filed the Complaint, Plaintiffs did not know the font size, location, format, or other salient features of this descriptive phrase, which are fundamental to any *bona fide* allegation of trademark use.  *See JA Apparel Corp. v. Abboud*, 682 F.Supp.2d 294, 311 (S.D.N.Y. 2010 (emphasizing importance of "the physical nature of the use in terms of size, location, and

---

[4] Because the September 30 and October 15 Letters are referenced by Plaintiffs in, and are integral to, the Complaint (*see, e.g.*, Compl. at ¶¶ 29, 34, 53, 54, 63, 73, 82, 82, 91, 96), it is appropriate for the Court to consider them on this motion.  *See Roth*, 489 F.3d at 509.

other characteristics in comparison with the appearance of other descriptive matter or other trademarks" and other precautionary measures in analyzing trademark use); *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 401 (2d Cir. 2009) (citing Restatement (Third) of Unfair Competition § 28 comment c (noting the relevance of the "physical nature of the use in terms of size, location, and other characteristics in comparison with the appearance of other descriptive matter or other trademarks," as well as the "presence or absence of precautionary measures such as labeling or other devices designed to minimize the risk that the term will be understood in its trademark sense")); *accord EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 65 (2d Cir. 2000). Plaintiffs had no factual basis allege trademark use by K2. Rather, they pleaded an erroneous legal conclusion disguised as a fact. This false—or at best conclusory—assertion of trademark use is insufficient to "state a claim to relief that is plausible on its face." *Ashcroft*, 556 U.S. at 678.

Furthermore, and notwithstanding Plaintiffs' pleading deficiency, the September and October 15 Letters facially demonstrate that K2 INTEGRITY intends to use the challenged phrase in a *non*-trademark manner. The letters state in relevant part:

September 20 Letter:

K2 will be adding the phrase "Founded by Jules Kroll and Jeremy Kroll" *under the K2 Integrity banner* on its website, letterhead, and published materials. Rosenbaum Decl., Ex. B (emphasis added).

October 15 Letter:

[T]o ensure that K2's founders are not confused with D&P (now "Kroll") or the various business lines that have been rebranded as "Kroll"—and to make clear that Jules and Jeremy Kroll are associated only with K2 and are not associated with Kroll—K2 will, on November 8, 2021, include the phrase "Founded by Jules Kroll and Jeremy Kroll" *under the K2 Integrity banner* on K2's website and other media. *Id.*, Ex. D (emphasis added).

Also, Paragraph 3(a) separately permits the use of the Kroll name in connection with the *disclaimer that has been and will continue to be displayed on K2's*

*websites*, stating that K2 is "not affiliated with Kroll Inc., Kroll Associates, Inc. …, or their affiliated businesses." *Id*., at fn. 2 (emphasis added).

The phrase will indisputably: (i) convey an accurate, biographical, and descriptive statement—*i.e.*, that K2 was founded by Jules Kroll and Jeremy Kroll; (ii) be displayed *under* the prominent K2 INTEGRITY trademark; and (iii) be displayed on K2's website with the disclaimer the parties agreed upon in the Settlement Agreement. These characteristics are hallmarks of *non*-trademark use.

For example, where, as here, "use of the challenged words or phrase is accompanied by a defendant's own, conspicuously visible mark, this generally does not constitute trademark use." *JA Apparel Corp. v. Abboud*, 682 F. Supp.2d 294, 310 (S.D.N.Y. 2010); *see also Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co.*, 125 F.3d 28, 30–31 (2d Cir. 1997) ("non-trademark use of [a] challenged phrase [is] evidenced by the fact that the source of the defendants' product is clearly identified by the prominent display of defendants' own trademarks"); *Car-Freshner Corp. v. S.C. Johnson & Son, Inc.*, 70 F.3d 267, 270 (2d Cir.1995) (it was not use "as a mark" when product was sold "in boxes prominently bearing [defendant's] trademark [and] corporate logo"); *Dessert Beauty, Inc. v. Fox*, 568 F. Supp. 2d 416, 424 (S.D.N.Y. 2008) *aff'd,* 329 App'x 333 (2d Cir. 2009) ("[w]ords on a product's packaging generally do not serve as a trademark where there is also a conspicuously visible trademark that clearly serves that function.").

Moreover, the use of a trademarked *surname* like "Kroll" paired with a *first name* plus a *disclaimer* presents an extraordinarily compelling example of *non*-trademark usage. To illustrate, in *Gucci v. Gucci Shops, Inc.*, the district court found that Gucci-family descendant and designer Paolo Gucci was "entitled to use his name to identify himself as the designer of products sold under a separate trademark which does not include the name 'Gucci'" as long as his name "appear[ed] after the trademark in advertisements and on labels, [was] no more prominent than the

trademark[, and was accompanied by] a disclaimer." 688 F. Supp. 916, 928 (S.D.N.Y. 1988); *see also JA Apparel*, 682 F.Supp.2d at 322 (finding that, after selling his trademarks that included *both* his first *and* last names, fashion designer Joseph Abboud was still permitted to descriptively use his *full name* to promote a new fashion line under a different trademark).

Finally, the mock-up of K2's website leaves no doubt regarding Plaintiffs' feigned assertion of trademark use. *See* Rosenbaum Decl., Ex. J (appending November 10 Letter with mock-up). Because Plaintiffs failed to adhere to the Settlement Agreement's pre-litigation dispute procedures, the mock-up was sent after the Complaint was filed. The Complaint, nonetheless, seeks relief for *anticipatory* trademark infringement and breach of contract and, thus, it necessarily relies on the "terms and effect" of how the challenged phrase would *actually* appear on K2's website; thus, the mock-up is "integral" to the Complaint.[5] If considered on this Rule 12(b)(6) motion, the mock-up lays entirely bare Plaintiffs' allegation that K2 "*stat[ed]*" that it "would proceed to use the word 'Kroll' *as part of a new trademark and tagline* on [its] website, letterhead, and published materials commencing November 8, 2021." (Compl. at ¶ 34) (referring to October 15 Letter) (emphasis added). The mock-up indeed elucidates K2's actual intentions. *See* October

---

[5] *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("Even where a document is not incorporated by reference, the court may nevertheless consider it [in the context of a motion to dismiss] where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint.") (citations and quotations omitted); *see also, e.g., Gayle v. Hearst Commc'ns, Inc.*, No. 19–CV–4699, 2021 WL 293237, at *1 (S.D.N.Y. Jan. 28, 2021) (considering defendant's copyright and trademark registration records that were not appended to complaint because complaint "relie[d] heavily upon the [the records'] terms and effect, thereby rendering the [records] integral to the complaint."). Further, this Court has previously considered documents not referred to in a complaint on a motion to dismiss without converting to a summary judgment motion, when doing so "would dispose of" the dispute, and where it would make "no sense to deny dismissal simply because [such documents were] not referenced in the Complaint." *Deutsch v. Pressler*, No. 21–CV–84, 2021 WL 1619505, at *4 (S.D.N.Y. April 26, 2021) (declining to favor "technicality over efficiency [or] form over substance" under Rule 12(b)(6)). This rationale applies with equal force here.

15 Letter (expressing K2's intention to use the word "Kroll" as part of its founders' first *and* last names, *under* the K2 INTEGRITY banner, and *along with* the website's existing disclaimer).[6]

In sum, Plaintiffs' disingenuous infusion of the word "trademark" throughout the Complaint does not—and cannot as a matter of law—save the Complaint from dismissal.

## II.   Plaintiffs Fail to State a Claim for Trademark Infringement and Unfair Trade Practices or Competition.

### A.   Plaintiffs' Claims Collapse Under the Settlement Agreement.

As noted above, the Settlement Agreement disposes not only of Counts Three and Four of the Complaint but also Counts One, Two, Five, Six, Seven, and Eight—*i.e.*, the entire Complaint. The parties' bargained-for contractual rights are not only the best indication of permissive usage of a trademark, but they are also favored under the law. *See Clorox Co.*, 117 F.3d at 55. All of

---

[6] Additionally, the November 10 Letter's elucidation of K2's *actual intended* use of the phrase "Founded by Jules Kroll and Jeremy Kroll" on its website, upon which Plaintiffs rely in the Complaint to assert claims for *anticipatory* trademark infringement and *anticipatory* breach of contract, should be considered by the Court for completeness. *See* Fed. R. Ev. 106. Plaintiffs' apparent position that this communication is inadmissible under Fed. R. Ev. 408 (*see* Rosenbaum Decl., at ¶ 15) fails since the letter makes no offers or any other attempts to compromise any claims whatsoever, let alone for "valuable consideration" as required by Rule 408(a). To the contrary, the November 10 Letter states, expressly, that the appended website "mock-up" is being provided "as an illustration, not a limitation on the bounds of K2 Integrity's rights." Rosenbaum Decl., Ex. J. And it concludes by stating "[a]ll rights are reserved." *Id.* K2's willingness to learn the "contractual or other legal bases" Plaintiffs would "purport to rely upon" cannot be construed as an offer, as that was part of a statement of K2's position and "'not an attempt to compromise the claim.'" *See EMA Fin., LLC v. NFusz, Inc.*, 509 F. Supp. 3d 18, 27 (S.D.N.Y. 2020) (quoting *Pierce v. F.R. Tripler & Co.*, 955 F.2d 820, 827 (2d Cir. 1992). Further, Plaintiffs' failure to engage with Defendants meaningfully before filing the Complaint as required by Section 10 of the Settlement Agreement, along with their baseless allegations in the Complaint that the September 30 and October 15 Letters convey K2's intention to use a "new trademark," cannot then hide from the Court key facts that are integral to the Complaint, particularly on a claim for *anticipatory* conduct. *See, e.g.*, Charles Alan Wright and Kenneth W. Graham, Jr., Federal Practice and Procedure § 5314 Exceptions—Other Permissible Uses, 23 Fed. Prac. & Proc. Evid. § 5314 (2d ed.) ("[C]ompromise evidence may be admitted if probative of the failure to . . . exhaust contract remedies.").

Plaintiffs' causes of action are predicated upon the same contrived allegations of intended, unauthorized use by K2 of KROLL's trademark. *See, e.g.,* Compl. at ¶¶ 41–58, 76–103.

Consequently, all of those claims should be dismissed.  K2's contractual right to use the word "Kroll" "in connection with the business of K2" "as part of" its founders' first and last names applies to every cause of action in the Complaint. *See Times Mirror Mags, Inc.*, 294 F.3d at 395–96 (affirming contractual rights concerning trademark usage); *see also Alzheimer's Found. of Am., Inc. v. Alzheimer's Disease and Related Disorders Ass'n., Inc.*, No. 10–CV–3314, 2018 WL 2084168, at *10 (S.D.N.Y. May 1, 2018) (dismissing claim for unfair competition under New York common law because "[d]ismissal of the Lanham Act claim requires dismissal of the unfair competition claim"); *Richemont North American, Inc. v. Huang*, No. 12–CV–4443, 2013 WL 534814, at *5 n.15 (S.D.N.Y. Sept. 24, 2013) ("substantially similar standards [are used] when analyzing claims for trademark infringement under the Lanham Act, 15 U.S.C. § 1114(1)(a); false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a); trademark infringement under New York common law; and unfair competition under New York common law.").[7]

Accordingly, Counts One, Two, Five, Six, Seven, and Eight of the Complaint—in addition to Counts Three and Four—should be dismissed in their entirety by virtue of the Settlement Agreement's plain and unambiguous terms.

---

[7] Plaintiffs' First and Second Causes of Action are brought under section 43(a) of the Lanham Act for Federal Trademark Infringement under 15 U.S.C. § 1114 (First) and Federal Unfair Competition under the Lanham Act 15 U.S.C. § 1125(a) (Second).  The Fifth Cause of Action under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, also alleges violations of the Lanham Act under 15 U.S.C. §§ 1114 and 1125(a).  Further, similar to the First, Second, and Fifth Causes of Action, the Sixth, Seventh, and Eighth Causes of Action (for Trademark Infringement Under New York General Business Law § 360-K (Sixth), Deceptive Acts and Practices under New York General Business Law § 349 (Seventh), and Unfair Competition under New York Common Law (Eighth)) are predicated upon allegations of trademark infringement and allegedly resulting confusion, and are duplicative of the First and Second Causes of action for related federal claims.

### B. *Plaintiffs Have Failed to Adequately Allege a Likelihood of Confusion.*

Alternatively, Plaintiffs' trademark and unfair trade practices claims should be dismissed because they have failed to plausibly allege a likelihood of confusion.  "The crucial issue in an action for trademark infringement is whether there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question."  *Savin Corp. v. Savin Grp.*, 391 F.3d 439, 456 (2d Cir. 2004) (internal quotation marks and alterations omitted).  Among the factors considered by courts to determine whether there is a likelihood of confusion is the sophistication of the buyers of the product or service at issue.  *Id.* at 456, 461

Here, on their face, KROLL's trademarks are glaringly *dissimilar* to the phrase "Founded by Jules Kroll and Jeremy Kroll," especially when that phrase is displayed under the far more prominent K2 INTEGRITY trademark.  As alleged in the Complaint, KROLL's registered trademarks include the following:

| Mark | Reg. No. | Reg. Date |
|---|---|---|
| KROLL | 1948659 | January 16, 1996 |
| KROLLDISCOVERY | 5740254 | April 30, 2019 |
| KROLLDISCOVERY & Design <br><br> KrollDisc⬤very | 5734353 | April 23, 2019 |
| KROLL ONTRACK | 2906977 | November 30, 2004 |

*See* Compl. at ¶ 16.  The *dissimilarity* between these marks and K2 INTEGRITY eviscerates any notion that use of the challenged phrase could lead to confusion between KROLL and K2.

Additionally, as KROLL states in the Complaint, the services associated with its marks are highly specialized and offered to "top-tier," sophisticated clientele.  Compl. at ¶12.  Hence, the nature of the services KROLL and K2 INTEGRITY offer, and the sophistication of the market in

which they offer them, underscore the *im*plausibility that "ordinarily prudent" buyers would misinterpret the source of such services here. *See Savin Corp.*, 391 F.3d at 461 (finding that "[t]he likelihood that such sophisticated consumers will be confused as to the source of the services is remote" where both parties "offer highly priced services" that "are ordinarily purchased by experienced professionals in the course of business").[8]

"In the context of a motion to dismiss, courts have disposed of trademark claims where simply looking at the work itself, and the context in which it appears, demonstrates how implausible it is that a viewer will be confused into believing that the plaintiff endorsed the defendant's work." *Louis Vuitton Malletier S.A. v. Warner Bros. Entm't Inc.*, 868 F. Supp. 2d 172, 183 (S.D.N.Y. 2012); *see, e.g. Gottlieb Dev. LLC v. Paramount Pictures Corp.*, 590 F. Supp. 2d 625, 635 (S.D.N.Y. 2008) (granting motion to dismiss because it is "simply not plausible" that the appearance of plaintiff's "trademark … would confuse ordinarily prudent consumers").

Here, Plaintiffs have not—and cannot—plausibly allege that the descriptive phrase "Founded by Jules Kroll and Jeremy Kroll" underneath the prominently displayed, registered trademark K2 INTEGRITY will cause confusion. Accordingly, for this independent reason, Plaintiffs' trademark infringement and unfair competition and trade practices claims should be dismissed for failure to state a claim.

## C. "Founded by Jules Kroll and Jeremy Kroll" Is a "Fair Use" of "Kroll."

The Court certainly need not reach "fair use" because among other flaws in the Complaint, the Settlement Agreement is dispositive, and Plaintiffs fail to plausibly assert a likelihood of

---

[8] If anything, the lengths to which Plaintiffs are going to disavow K2's bargained-for right to identify its founders demonstrates that Plaintiffs are trying to misappropriate the goodwill Jules Kroll and Jeremy Kroll have developed *in K2* since its founding *over a decade ago*.

confusion.  Nonetheless, while fair use is an affirmative defense, it may be adjudicated on a motion to dismiss if the facts necessary to establish the defense are evident.  *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004); *see also Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013). Establishing that a challenged phrase constitutes fair use of a trademark is satisfied by showing that the phrase in question is used (i) other than as a mark, (ii) in a descriptive sense, and (iii) in good faith. *See EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 64 (2d Cir. 2000); *see also KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 118 (2004); *Car-Freshner*, 70 F.3d at 269 (citing cases); 15 U.S.C. § 1115(b).[9]

*First*, as set forth in Point I.B, above, K2's intended use of the phrase "Founded by Jules Kroll and Jeremy Kroll" is *not* a trademark usage.  Therefore, the first element is met.

*Second*, on its face, the phrase is descriptive.  Indeed, use of the Kroll name "is the only reasonably available means" by which Jules Kroll and Jeremy Kroll can inform K2's potential customers that they are the founders of K2 Integrity.  *See Dessert Beauty*, 568 F.Supp.2d at 426; *see also generally B&L Sales Assocs. v. H. Daroff & Sons, Inc.*, 421 F.2d 352 (2d Cir. 1970) (finding challenged was used descriptively).  Plaintiffs themselves confirms as much by pleading that "Jules Kroll founded Defendant K2 Intelligence, LLC" to convey this same fact.  Complaint at 23; *see also id.* at 8.  Simply put, there is no way of communicating that Jules Kroll and Jeremy

---

[9] The fair use doctrine has been applied to claims under 15 U.S.C. § 1114, *see Kelly-Brown v. Winfrey*, 717 F.3d 295 (2d Cir. 2013); federal claims under 15 U.S.C. § 1125(a) [Lanham Act § 43(a)], *see EMI Catalogue P'ship*, 228 F.3d 56, 64 (2d Cir. 2000) (fair use could protect phrase); and related state claims.  *see Car-Freshner*, 70 F.3d at 267, 268, 270.  Courts have held that "when a defendant establishes fair use for purposes of federal law, related state law claims also fail." *Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*, 156 F. Supp. 3d 425, 435 (S.D.N.Y. 2016) (internal citations and quotations omitted), aff'd, 674 F. App'x 16 (2d Cir. 2016) (unpublished); *JA Apparel Corp. v. Abboud*, 682 F. Supp. 2d 294, 317 (S.D.N.Y. 2010).

Kroll founded K2 Integrity other than to use their first and last names.  Thus, the phrase is indisputably descriptive, and the second element is met easily.

*Third*, K2's use of "Kroll" as part of its founders' first and last names is in good faith.  The phrase's positioning beneath the more prominent K2 INTEGRITY trademark is powerful evidence of good faith.  *See, e.g., Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co.*, 125 F.3d 28, 30-31 (2d Cir. 1997) (finding fair use when defendant prominently displayed own marks indicating source along with challenged phrase).  Further, K2's website displays not only its corporate name but also the disclaimer stating that K2 is "not affiliated with Kroll Inc., Kroll Associates, Inc. …, or their affiliated businesses."  *See JA Apparel*, 682 F.Supp.2d 294 at 316 (ads that featured the challenged trademark "Joseph Abboud" found to be in good faith where defendant's trademark was more prominently displayed along with a disclaimer).  Likewise, as K2 made clear to Plaintiffs, K2's purpose for adding the challenged phrase is to *avoid confusion* with the rebranded version of Duff & Phelps, *not to cause confusion*.  *See* Rosenbaum Decl., Exs. B and D.  And, finally, K2's compliance with the Settlement Agreement's plain terms coupled with its advance notice to KROLL underscore its good faith.

Accordingly, the challenged phrase constitutes a fair use of "Kroll" by K2.

### III.   KROLL Failed to Adhere to the Settlement Agreement's Dispute Resolution Provision, which is yet Another Independent Reason for Dismissal.

Apart from the Complaint's substantive lack of merit and other pleading deficiencies which require dismissal before the Court even reaches this argument, Plaintiffs' failure to adhere to Section 10 of the Settlement Agreement is an independent basis for dismissal.  Plaintiffs did not even attempt to plead compliance with the dispute resolution provision, let alone do so plausibly.  Such a failure thus requires dismissal of the Complaint in addition to the bases set forth above.  *See ISS Facility Servs., Inc. v. Fedcap Rehab. Servs., Inc.*, No. 20–CV–6591, 2021 WL 2784550,

23

at *4–5  (S.D.N.Y. July 2, 2021) (dismissing complaint for failure to satisfy a condition precedent to filing suit, because plaintiff did not plausibly allege compliance with a contract's dispute resolution provision); *Negrete v. Citibank, N.A.*, 759 F. App'x 42, 46–47 (2d Cir. 2019) (finding that plaintiff failed to "use the required dispute resolution provision" mandated by contract); *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 261 F. Supp.2d 293, 294–296 (S.D.N.Y. 2003) (dismissing complaint where plaintiff failed to satisfy contractual condition precedent to filing lawsuit).

Plaintiffs' transgression here is more than mere formality: it has caused Defendants actual prejudice.  K2 in good faith informed Plaintiffs of its intentions, yet Plaintiffs not only flouted the Settlement Agreement's operative terms in response but then used conscious blindness to misinform the Court of K2's intentions—repeatedly stating, baselessly, that K2 intends to use a "new trademark."  The Court can dismiss the Complaint for this independent reason, if only to rectify the considerable prejudice to Defendants from Plaintiffs' premature filing, particularly if the Court declines to consider case-dispositive evidence such as the website mock-up.

## CONCLUSION

For the reasons herein Defendants respectfully request that the Court dismiss the Complaint in its entirety.

Dated: November 29, 2021

Respectfully submitted,

KOBRE & KIM LLP

By: /s/ Zachary D. Rosenbaum
Zachary D. Rosenbaum

Steven G. Kobre
George Stamatopoulos
800 Third Ave, 6th Floor
(212) 488 1200

*Counsel for Defendants K2 Integrity Holdings, Inc., K2 Intelligence, LLC, and Jules Kroll*

25